UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

In the matter of the Petition for the Appointment
of an Arbitrator in the Arbitration between:

HAMILTON PROPERTIES LIMITED,

                      Petitioner,                    1:14-CV-06507 (SHS/KNF)

      against

FHR GULF MANAGEMENT FZ LLC and
FAIRMONT HOTELS & RESORTS (U.S.) INC.,

                      Respondents.
_____

**FAIRMONT'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS CROSS-PETITION
<u>REGARDING THE APPOINTMENT OF A SOLE ARBITRATOR</u>**

                                              Peter J.W. Sherwin
                                              Matthew J. Morris
                                              PROSKAUER ROSE LLP
                                              Eleven Times Square
                                              New York, New York 10036

                                              *Attorneys for Respondents FHR Gulf Management*
                                              *FZ LLC and Fairmont Hotels & Resorts Inc.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I. THE COURT SHOULD GRANT FAIRMONT'S CROSS-PETITION TO APPOINT ONE OF THE ARBITRATORS IT IDENTIFIED ........................................... 2

    A. EACH OF FAIRMONT'S NOMINEES IS QUALIFIED TO BE APPOINTED ........................ 2

        1. Each Is on the AAA National Roster ............................................................ 2

        2. Each Has Substantial Hotel Industry Experience ........................................ 3

        3. Each Has the Ability to Apply New York Law Himself ............................. 4

        4. Each Is Available During the Relevant Time Frame ................................... 4

    B. NONE OF FAIRMONT'S NOMINEES IS DISQUALIFIED FROM BEING APPOINTED ......... 5

        1. None Has Been Contacted Ex Parte .............................................................. 5

        2. None Lacks Impartiality and Independence due to Bias ............................ 7

        3. None Has Conflicts ......................................................................................... 9

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   995 F. Supp. 190 (D. Mass. 1998) ............................................................................................5

**STATUTES**

9 U.S.C. § 5 ...................................................................................................................................8

9 U.S.C. § 10 .................................................................................................................................8

9 U.S.C. § 206 ...........................................................................................................................3, 8

**ARBITRATION RULES**

AAA COMM. R-12 .....................................................................................................................7, 9

AAA COMM. R-13 .....................................................................................................................6, 7

AAA COMM. R-14 ........................................................................................................................6

AAA COMM. R-18 ........................................................................................................................7

AAA COMM. R-19 .....................................................................................................................6, 7

**OTHER AUTHORITIES**

AAA, *Code of Ethics* Canon III .....................................................................................................7

AAA, HANDBOOK ON COMMERCIAL ARBITRATION (2d ed. 2010) .................................................7

Fairmont submits this reply memorandum of law in further support of its cross-petition for the appointment of the sole arbitrator in an international arbitration between the parties.

## PRELIMINARY STATEMENT

From the start of the parties' efforts to have a sole arbitrator appointed to resolve the high-stakes arbitration between them, Hamilton Properties has consistently attempted to game the process to obtain an unfair advantage.  First, it engaged in secret ex parte oral communications expressly prohibited by the governing AAA Rules with each and every one of the candidates it has suggested to Fairmont and now to this Court.  Second, it unjustly accuses Fairmont of being dilatory simply because Fairmont will not roll over and accept the candidates Hamilton Properties has proposed who are patently biased towards Hamilton Properties and against Fairmont and have insufficient experience to be the sole arbitrator of this dispute.  Third, it brazenly argues that this Court should ignore the contractual requirement that the sole arbitrator be a member of the AAA National Roster, as only one of its nominees is, but should hold sacrosanct the requirement of ten years' industry experience, as it argues Fairmont's nominees have an insufficient amount.  This should not be tolerated, and the Court should appoint one of the highly respected, experienced, independent, and impartial arbitrators that Fairmont has identified or another such individual of the Court's choosing.

## STATEMENT OF FACTS

Hamilton Properties devotes much of its brief (and correspondence to the Court) to its contention that Fairmont has somehow delayed the appointment process, but that is inaccurate, as well as irrelevant.  In Fairmont's statement of facts, which Hamilton Properties does not contest, Fairmont set out the chronology, showing clearly that it has not delayed anything.  (FHR Mem. at 3-7.)  Indeed, the AAA informed the parties only on June 2, 2014 that it does not have any candidates on its panels who match the contractual qualifications, and then, during the

following weeks while the arbitration was stayed in furtherance of mediation and settlement negotiations, Fairmont considered Hamilton Properties' proposals and made its own proposals until Hamilton Properties abruptly commenced this proceeding ex parte on July 25, 2014. (*Id.* at 5-7.) There also have been no extensions of time, other than the extra week that Hamilton Properties unilaterally took to file its reply papers in support of its petition. (Docket Nos. 18-21.)

## ARGUMENT

**I. THE COURT SHOULD GRANT FAIRMONT'S CROSS-PETITION TO APPOINT ONE OF THE ARBITRATORS IT IDENTIFIED**

### A. EACH OF FAIRMONT'S NOMINEES IS QUALIFIED TO BE APPOINTED

#### 1. Each Is on the AAA National Roster

Hamilton Properties agrees that the arbitration agreement and AAA Rules require the sole arbitrator to be on the National Roster and does not dispute that any court-appointee should have the necessary experience to run a fast-track high-stakes arbitration. (FHR Mem. at 9-11; HPL Opp. at 9.) Also, it does not dispute that each of Fairmont's nominees is on the Roster and is a highly experienced arbitrator (FHR Mem. at 21-23; HPL Opp. at 9-11), whereas only one of Hamilton Properties' candidates is on the Roster and he has insufficient experience as a sole arbitrator (FHR Mem. at 16-17).[1] Thus, the Court should appoint one of Fairmont's nominees.

Instead, in opposition, Hamilton Properties argues that the Court should ignore this requirement because, "when the AAA arbitrator selection process failed, the parties were no longer bound to select an arbitrator from the AAA National Roster" (HPL Opp. at 9), but that is nonsense. Certainly, the parties can at any time agree on a given individual as the sole arbitrator

---

[1] Hamilton Properties, though, did boldly assert that Mr. Hoffman (as well as apparently Messrs. Tantleff and Lehman) was still "eminently qualified" to be the sole arbitrator, even though none of them is on the Roster and none has served as an arbitrator. (HPL Opp. at 10.) Hamilton Properties' definition of "eminently qualified" differs from any Fairmont is aware of.

2

or agree to modify the qualifications for the arbitrator, and that subsequent agreement would trump the parties' arbitration agreement and the Rules.[2]  In this proceeding, though, the Court is to appoint the sole arbitrator "in accordance with the provisions of the agreement."  9 U.S.C. § 206.  Thus, the Court should appoint the nominee who best or most closely satisfies all of the criteria, including membership on the Roster, and who is not otherwise precluded, such as by ex parte communications, apparent bias, or conflict.  It should appoint one of Fairmont's nominees.

### 2. Each Has Substantial Hotel Industry Experience

Each of the arbitrators Fairmont proposed in its cross-petition identified multiple hotel industry matters in which he served as arbitrator or counsel.  (FHR Mem. at 23-25.)  Hamilton Properties previously conceded that this constitutes substantial hotel industry experience and does not now recant that statement but, instead, contends that they do not have ten years' experience.  (*Id*. at 24; Kratenstein Aff. Ex. M; HPL Opp. at 3-5.)  It is not known from these candidates' responses whether their substantial hotel industry experience covers the period of ten years, but, even if not, their industry experience is sufficient to merit them being appointed in this case, given all of the relevant criteria and the present situation.

Hamilton Properties, though, would elevate the industry experience criterion above all others, which is not appropriate.  Indeed, Hamilton Properties argues in the prior part of its brief

---

[2]   That is what the AAA was suggesting the parties do when it found that none of the individuals on its roster meet all of the required criteria (Kratenstein Aff. Ex. E); it was not suggesting that those criteria or any one of them were no longer applicable, as Hamilton Properties boldly and unjustifiably asserts (HPL Opp. at 9).  Indeed, notably, the AAA offered the parties direct access to its Roster.  (Kratenstein Aff. Ex. E.)  And Fairmont did not somehow implicitly acknowledge that the Roster requirement was obviated when it stated that Hamilton Properties' candidates lack "the requisite experience to serve as a sole arbitrator in a substantial international arbitration on an extremely fast-track schedule."  (*Id*. Ex. S; HPL Opp. at 9.)  Clearly, even as part of the parties' attempt to agree on a sole arbitrator outside of the AAA process and prior to this proceeding, Fairmont was reiterating the importance of the requirement of being on the AAA Roster because that is part and parcel of the requisite experience.

that the AAA's inability to locate a sole arbitrator means the contractual arbitration experience requirement of being on the Roster disappears, but then argues here that the contractual industry experience requirement must remain inviolate.  (HPL Opp. at 3-4, 9-10.)  Rather, either all requirements have to be satisfied by a candidate who is not otherwise disqualified (such as by ex parte communications, bias, or conflict) or, if such a person cannot be identified, the Court should weigh the requirements and appoint a non-disqualified person who most closely satisfies them.  Fairmont's candidates do so, much more than Hamilton Properties' candidates, each of whom is also disqualified on various grounds.

### 3.  Each Has the Ability to Apply New York Law Himself

Hamilton Properties agrees that the agreement requires the sole arbitrator to apply New York law and does not contest that Fairmont's nominees can do so, as each is an attorney in New York admitted to the New York bar.  (FHR Mem. at 11-12, 23; HPL Opp. at 11.)  Therefore, this Court should appoint one of Fairmont's nominees, none of whom is unqualified on this ground like Hamilton Properties' candidates, Messrs. Tantleff and Risman (FHR Mem. at 21).[3]

### 4.  Each Is Available During the Relevant Time Frame

Each of Messrs. Carter, Davidson, and Fellas is available to conduct the arbitration and bring it to completion within 120 days of appointment, as provided in the arbitration agreement, and Hamilton Properties does not dispute that.  Thus, any of them can be freely appointed.

As for Mr. Aksen, he reported that he can oversee the proceedings starting immediately and just cannot hold the evidentiary hearing before January 15, 2015, but the 120-day period

---

[3]  Messrs. Tantleff and Risman each admitted that he would need to rely on colleagues in order to apply New York law.  Hamilton Properties withdrew Mr. Tantleff's nomination, but failed even to acknowledge this serious continuing problem with Mr. Risman, other than to assert *ipse dixit* that "[a]ll of Petitioner's proposed arbitrators are capable of applying the internal law of the state of New York" (HPL Opp. at 11).

should still be able to be met.  First, the last 30 days of that period have been reserved for preparation of the written award, but Mr. Aksen may be willing to reduce that and thereby lengthen the time for the other proceedings.  Second, the period does not begin to run until the sole arbitrator is appointed, and it may take a little time following full submission of the petitions for the Court to make the appointment.  Third, if it is just a matter of a few weeks in order to have the appropriate person serve as the sole arbitrator, the Court could weigh that in making its determination, in the event the parties are unable to agree on such a brief extension.  Thus, Hamilton Properties' contention that Mr. Aksen should not be considered is wrong.

### B. NONE OF FAIRMONT'S NOMINEES IS DISQUALIFIED FROM BEING APPOINTED

#### 1. None Has Been Contacted Ex Parte

Hamilton Properties concedes that:  (a) Fairmont did not approach ex parte any of the arbitrators it proposes; and (b) Hamilton Properties *did* have ex parte communications with each of the arbitrators it proposes.  (Reply to Cross-Pet. ¶¶ 43, 48-52.)  That means the arbitrators Fairmont proposes are not disqualified by ex parte contacts in violation of the governing AAA Rules, in contrast to *all* of Hamilton Properties' candidates.

As Fairmont set out (FHR Mem. at 12-15), it is critically important in a sole arbitrator case as here that there be no ex parte communications with the potential arbitrator, as they deprive the other party of "an equal right to participate in the appointment process."  *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 995 F. Supp. 190, 208 (D. Mass. 1998).  Indeed, approaching a candidate for sole arbitrator ex parte creates the serious risk of bias because the candidate will realize that he owes his appointment to the efforts of the party that approached him, even if the merits of the dispute were not discussed.  Those are just some of the reasons why the governing AAA Rules prohibit ex parte communications in no uncertain terms:  "*No party and no one acting on behalf of any party shall communicate ex parte with an arbitrator or*

*a candidate for arbitrator concerning the arbitration*," with specified limited exceptions. (AAA COMM. R-19(a) (emphasis added).) Thus, given the fundamentally critical importance of the appointment process and the early stage of the arbitration at which the appointment is made, it is necessary not to appoint any candidate who engaged in ex parte communications, regardless of whether the specific ex parte communications would justify removal if the candidate had already been appointed and the arbitration were in full progress.

In order to justify its prohibited behavior that leaves only Fairmont's nominees standing, Hamilton Properties argues that it was more expedient and efficient for it to speak ex parte with all of the people it proposes (and keep that secret from Fairmont). But Hamilton Properties' own sense of what is convenient and beneficial for it is not an exception to the express prohibition, is not consistent with due process or fair play, and is not even logical, as Hamilton Properties could have easily involved Fairmont from the beginning, just as Fairmont involved Hamilton Properties. Indeed, Hamilton Properties' vociferous and lengthy rationalizations for its behavior as being entirely proper, rather than the product of a lapse of judgment or ignorance of the rules, suggests that it did seek and obtain an advantage through its ex parte communications.

Hamilton Properties also tries to shoehorn itself into one of the limited exceptions in Rule 19 by patently misstating the rules. Hamilton Properties invokes the exception in Rule 19 for ex parte communications with "a candidate for direct appointment pursuant to R-13," but a Rule 13 appointment is a "direct" or unilateral appointment by *one* party of *an arbitrator to a panel* and *not* a joint appointment of a sole arbitrator by agreement of the parties. Rule 13 is entitled "Direct Appointment by *a* Party," refers throughout to "*the* appointing *party*" or "*the party* to make the appointment," and expressly addresses agreements "[w]here the parties have agreed that *each party* is to name *one* arbitrator." (AAA COMM. R-13 (emphasis added); *see id.* R-14

(regarding appointment of the chair after appointment of the co-arbitrators pursuant to Rule 13).) As such, Rule 18 provides that "[t]he parties may agree in writing, however, that arbitrators directly appointed by a party pursuant to Section R-13 shall be non-neutral . . . ." (*Id*. R-18(b).) The appointment of a sole arbitrator is, rather, governed by Rule 12, which addresses appointment of an arbitrator by "*the parties*," either by the strike and rank process or by agreement of the parties, which have always been the two scenarios here.

Hamilton Properties' reliance on paragraph B(1) of Canon III to the AAA Code of Ethics is likewise misplaced. As Fairmont already set out (FHR Mem. at 13), paragraph A of Canon III provides that paragraph B is *not* applicable if the governing arbitration rules address ex parte communications, which is the case here because of Rule 19, and, regardless, the exception in paragraph B(1) that Hamilton Properties invokes is, like that in Rule 19, limited to direct appointment by a party of a co-arbitrator. *See* AMERICAN ARBITRATION ASSOC., AAA HANDBOOK ON COMMERCIAL ARBITRATION 203 (2d ed. 2010) (regarding Canon III.B, "[t]he 2004 Revision provides guidance, absent in the 1977 Ethics Code, on what a prospective arbitrator may discuss on an ex parte basis with *the appointing party* concerning the potential appointment. . . . In addition, Canon III.B allows a *party-appointed* arbitrator to consult with *the appointing party* concerning [listing items]." (emphasis added)) (Sherwin Reply Decl. Ex. 39).[4]

### 2. None Lacks Impartiality and Independence due to Bias

Hamilton Properties does not dispute that impartiality and independence are requirements to be an arbitrator both under AAA Rule 18 and FAA case law. Further, it does not assert that

---

[4] Hamilton Properties has since compounded its problem by informing at least one of its candidates that "the parties are currently in a dispute over the arbitrator selection process." (Sherwin Reply Decl. Ex. 40.) Mr. Hoffman now knows not only that Hamilton Properties is the party that proposed him, but also that there is a dispute regarding his appointment, as to which he will easily and correctly infer that Fairmont objects to his service.

any of Fairmont's nominees suffers from a disqualifying bias, as Fairmont has demonstrated as to Hamilton Properties' candidates.  Rather, Hamilton Properties argues that the standard for bias disqualification is very high (such that its candidates should survive scrutiny), but it is wrong and the Court should appoint one of Fairmont's nominees.

First, *each* of the cases upon which Hamilton Properties relies for its restrictive standard concerns whether to vacate an arbitration award for "evident partiality."  Vacatur of an award after the completion of an arbitration is an entirely different situation from the one presented here, which involves a request to appoint *prospectively* a given individual as to whom significant questions of bias or appearance of bias have been raised.  Indeed, the restrictive "evident partiality" standard Hamilton Properties would apply here is dictated in the vacatur situation by statute, 9 U.S.C. § 10, but is entirely absent in the appointment situation under 9 U.S.C. §§ 5 and 206, where the Court enjoys great discretion in determining who is the best person to appoint.

Second, Hamilton Properties misstates Fairmont's position.  Fairmont is not asserting that a candidate is disqualified merely by having "industry experience" and, hence, "views" on "certain topics."  (HPL Opp. at 13.)  Rather, Fairmont demonstrated that there is a sufficient appearance of bias that disqualifies a candidate from prospective appointment when he has had consistent and near-total alignment with one side of an industry, such as that here where there is a divide in the hotel industry between owners/lenders and operators.  (FHR Mem. at 17-19.)  For example, Mr. Stein, one of Hamilton Properties' candidates, reports in his biographic statement that, with respect to hotel management agreements, financing, and disputes, he "advise[s] *owners and lenders* on issues in hotel management agreements."  (Lu Decl. Ex. F (emphasis added).) Similarly, Mr. Stein's publications are all one-sided, notably for the owner/lender:  his principal publications in this industry include "Hotel Management Agreements – The *Owner's* Agenda"

8

and "*Lenders* and Hotel Management Agreements." (Kratenstein Aff. Ex. Q at 7 (emphasis added).) And even the one publication that appears from its title might be of use to operators (and which Hamilton Properties touts) is, in fact, a further illustration of Mr. Stein's owner alignment, as his article largely offers strategies to managers that he then demonstrates are certain to fail and that he advises any owner should reject.[5]

Ultimately, the parties agreed that the selection process would be governed by the AAA Rules, which allow the parties simply to strike some candidates (R-12(b)). That, in practice, means parties can avoid candidates they believe are habitually aligned with the adversary's perspective or otherwise biased. Rather than reward Hamilton Properties' attempt to write the AAA Rules out of the parties' agreement, the Court should afford due weight to the fact that only the arbitrators proposed by Fairmont are undisputedly impartial and independent.

### 3. None Has Conflicts

Hamilton Properties does not assert that Mr. Aksen has any conflict, and its assertion of conflicts as to Messrs. Carter, Davidson, and Fellas are not well taken.[6]

The conflict Hamilton Properties claims as to Mr. Carter is based on his disclosure that others at his law firm represent "a subsidiary of Colony Capital in a single potential corporate transaction in Asia in which Fairmont Hotels may be involved." (Lu Decl. Ex. B.) Colony Capital was an indirect partial owner of Fairmont, but sold its interest in 2012. (Sherwin Reply

---

[5] Mr. Stein wrote: "In representing an Owner, the writer would argue that almost everything suggested here is 'off market,' 'non-standard,' or 'over the top.'"; "To the extent that Manager even raises these issues, however, Manager should expect significant 'push back' from Owner and its counsel."; "On the other hand, Manager's request for Early Termination protection might prompt gales of laughter from Owner and its counsel. In that case, if Manager drops the request, this may create bad 'legislative history' if the transaction ever goes into litigation." (Lu Decl. Ex. G at 2, 3, 4.)

[6] Hamilton Properties withdrew its proposals of Ms. Fanelli and Mr. Tantleff due to the disclosure of apparent conflicts, and Fairmont does so now with respect to Mr. Friedland.

Decl. ¶ 4.) Moreover, Fairmont is unaware of any potential transaction in Asia involving it and Colony Capital (*id.* ¶ 5); indeed, Mr. Carter reported only that Fairmont "may be involved."[7]

As for Mr. Davidson, the asserted conflict is based upon an engagement by a partner at Hughes Hubbard, but Mr. Davidson has retired from that firm, conducts his arbitration practice independently of the firm and for his own account, and renders only limited services to it as an independent contractor, such as conducting moot courts. (Lu Decl. Ex. E.) Thus, any engagement by Hughes Hubbard cannot be a conflict for Mr. Davidson.

Further, as for Mr. Fellas, who is a partner at Hughes Hubbard, that representation does not amount to a conflict. It consists solely of a different Hughes Hubbard partner providing ERISA advice to her former law firm; in turn, that other law firm provides advice to its clients that includes some of the ERISA advice it has obtained, and one of its clients is a member of the ultimate ownership group of Fairmont. (*Id*. Exs. D, E.) That is too attenuated to constitute a disqualifying conflict.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Fairmont's cross-petition and appoint one of the individuals Fairmont has identified or a qualified individual the Court identifies.

---

[7] That Mr. Carter was a law partner of one of the attorneys representing Hamilton Properties in this matter is of the same nature as Mr. Carter's service on the executive committee of an organization in the field of international arbitration, another member of which is one of the counsel to Fairmont. (Lu Decl. Ex. B.) Neither of those constitutes a conflict, yet, notably, Hamilton Properties raised to this Court only the latter (HPL Opp. at 17-18).

Dated: New York, New York
September 11, 2014

                    PROSKAUER ROSE LLP

                    <u>/s/ Peter J.W. Sherwin</u>
                    Peter J.W. Sherwin
                    Matthew J. Morris

                    Eleven Times Square
                    New York, New York 10036
                    212.969.3000 tel
                    psherwin@proskauer.com
                    mmorris@proskauer.com

                    *Attorneys for Respondents FHR Gulf Management FZ LLC and Fairmont Hotels & Resorts (U.S.) Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 11, 2014, I caused service of Fairmont's Reply Memorandum of Law in Further Support of Fairmont's Cross-Petition Regarding the Appointment of a Sole Arbitrator dated September 11, 2014 to be made via the Court's Electronic Case Filing system on the following:

> John J. Calandra
> Andrew B. Kratenstein
> Audrey Lu
> McDermott Will & Emery LLP
> 340 Madison Avenue
> New York, NY 10173-1922
> (212) 547-5695
> jcalandra@mwe.com
> akratenstein@mwe.com
> aulu@mwe.com
> *Attorneys for Petitioner Hamilton Properties Limited*

>  /s/ Peter J.W. Sherwin
> Peter J.W. Sherwin
> PROSKAUER ROSE LLP
> Eleven Times Square
> New York, New York 10036
> 212.969.3000 tel
> psherwin@proskauer.com